# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**07-754**

SANDRA GUILLORY, ET AL.

VERSUS

ROYAL, INC. D/B/A VALLEY VIEW HEALTH CARE

**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2007-0082-B
HONORABLE WILLIAM BENNETT, DISTRICT JUDGE

**********

## OSWALD A. DECUIR
### JUDGE

**********

Court composed of John D. Saunders, Oswald A. Decuir, and J. David Painter, Judges.

**AFFIRMED.**

**David R. Sobel**
**Jeremy C. Cedars**
**Provosty, Sadler, DeLaunay, Fiorenza & Sobel**
**P. O. Drawer 1791**
**Alexandria, LA 71309-1791**
**(318) 445-3631**
**Counsel for Defendant/Appellee:**
    **Royal, Inc. d/b/a Valley View Health Care**

**Chris Villemarette**
**Hawkins & Villemarette**
**107 Regency Square**
**Lafayette, LA 70508**
**(337) 233-8005**
**Counsel for Plaintiffs/Appellants:**
    **Sandra Guillory**
    **Bernadine Brown**
    **Leon Desselle**
    **Barbara Desselle**

**DECUIR, Judge.**

The plaintiffs, Sandra Guillory, Bernadine Brown, Leon Desselle, and Barbara Desselle, filed suit against Royal, Inc., d/b/a Valley View Health Care, seeking damages for the death of their mother while she was a resident at Valley View Nursing Home. Contending the plaintiffs' suit was premised on allegations of medical malpractice, Royal filed an exception of prematurity as the plaintiffs did not submit their claim to a medical review panel as required by La.R.S. 40:1299.41, *et seq.* The trial court maintained the exception, and the plaintiffs have appealed. For the following reasons, we affirm the judgment rendered in favor of the defendant.

The allegations of the petition state that Julia Marie Desselle, the plaintiffs' decedent, was a resident of Valley View Nursing Home at the time of her death. Mrs. Desselle had a history of choking and had previously been hospitalized as a result of choking on a sandwich. The plaintiffs assert that following her return to the nursing home after the hospitalization, her physician instructed the staff to assist and supervise Mrs. Desselle while eating. Nevertheless, the petition alleges that, on January 28, 2006, Mrs. Desselle was left unattended in the cafeteria with a serving of peaches in front of her. She choked on the peaches and attempted to alert the staff by "striking the table and flailing her arms, but no one came to her assistance until she fell to the floor." She was pronounced dead later that day.

The plaintiffs' petition asserts several acts of negligence on the part of the nursing home, including failing to adequately monitor Mrs. Desselle, failing to follow doctor's orders, failing to promptly attend to her after observing that she was choking, failing to follow the appropriate standard of care for patients who are at risk of choking, failing to follow the plan of care, and failing to provide adequate care in accordance with community standards. In support of the exception of prematurity, the defendant submitted into evidence the decedent's medical records which

documented her medical history, the doctor's orders for a regular diet, and the event leading up to her death on January 28, 2006. The issue before us now is whether the plaintiffs' allegations of negligence constitute a claim of medical malpractice, which is governed by strict statutory procedural and substantive rules, or a claim of general negligence.

The Medical Malpractice Act defines the term "malpractice" as:

> any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.

La.R.S. 40:1299.41(A)(8). Additionally, the term "health care" is defined as:

> any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement, or during or relating to or in connection with the procurement of human blood or blood components.

La.R.S. 40:1299.41(A)(9). The Act specifically encompasses nursing homes as health care providers. La.R.S. 40:1299.41(A)(1). If we find, as did the trial court, that the provisions of the Act apply in this case, then the plaintiffs' failure to submit this claim to a medical review panel renders their petition premature. La.R.S. 40:1299.47(B).

In the procedurally similar case of *Taylor v. Christus Health Southwestern La.*, 04-627 (La.App. 3 Cir. 11/10/04), 886 So.2d 696, *writ denied,* 04-3007 (La. 3/11/05), 896 So.2d 65, this court gave the following analysis of whether a hospital's alleged negligence in failing to prevent a patient's fall in the shower was covered by the

2

Medical Malpractice Act. After defining both "malpractice" and "health care," the court stated:

> In determining whether the circumstances of this case, as alleged in the petition, fall under the confines of the definitions quoted above, we look to the jurisprudence. The Louisiana Supreme Court in *Coleman v. Deno,* 01-1517 (La.1/25/02), 813 So.2d 303, articulated several considerations for determining whether a claim is governed by the medical malpractice statute. Those factors include, for instance, whether the alleged wrong is "treatment related" or caused by want of professional skill, involved an assessment of the patient's condition, or was within the scope of activities a hospital is licensed to perform. Also relevant is whether expert medical evidence will be required to determine the appropriate standard of care.

> In *Dominick v. Rehabilitation Hospital of New Orleans,* 97-2310 (La.App. 4 Cir. 4/15/98), 714 So.2d 739, the plaintiff slipped and fell on a wet floor in the hospital kitchen, while walking with a small walker and with the aid of a physical therapist. The plaintiff alleged negligence on the part of the hospital. The hospital's exception of prematurity was granted; the court held the injury occurred during the rendition of health care and was subject to statutory malpractice procedure, even though the plaintiff alleged alternative theories of liability.

> In *Harris v. Sternberg,* 01-1827, 01-2170 (La.App. 4 Cir. 5/22/02), 819 So.2d 1134, *writ denied,* 02-1617 (La.9/30/02), 825 So.2d 1198, the plaintiff fell off a scale in a doctor's office and alleged that the scale had not been properly secured by the doctor's staff. Applying the factors of *Coleman v. Deno*, the court found that the incident involved medical malpractice as the injury occurred during the rendition of medical services.

> . . . .

> With regard to the particular facts alleged in this case, we find the failure of the hospital nursing staff to monitor or assist a post-surgical elderly patient who has expressed a desire to take a shower must be analyzed under the medical malpractice laws of this state. Likewise, with regard to the absence of a bath mat near the shower, we find the act of properly equipping a hospital room's private bathroom should be addressed within the confines of medical malpractice. The actions and inactions of the nursing staff will be considered. An assessment of Mr. Taylor's post-surgical status may be examined. Issues of hospital procedure might arise. Expert testimony on nursing practices and hospital equipment may be relevant. In short, the plaintiffs' allegations of negligence belong in the medical malpractice arena.

*Id.* at 698-699.

In the present case, the trial court considered the facts alleged in light of the applicable jurisprudence, specifically, *Coleman v. Deno,* 01-1517 (La. 1/25/02), 813 So.2d 303 and *Eldridge v. Heritage Manor, LLC,* 06-718 (La.App. 3 Cir. 11/2/06), 942 So.2d 743. The court reached the following conclusions:

> When reviewing the totality of the allegations of the plaintiff's petition, it is clear that these are allegations of an unintentional tort and/or a breach of contract based on professional services rendered, or which should have been rendered, by Valley View, who is a qualified health care provider. This meets the definition of "malpractice" without question.
>
> Further, this Court has reviewed each case cited by the parties and finds that the case closest on point appears to be the case of ***Eldridge v. Heritage Manor, LLC*** 942 So.2d 743. Following ***Eldridge***, and also applying the factors set forth by the Louisiana Supreme Court in ***Coleman v. Deno*** 813 So.2d 303, the allegations in the Petition clearly are allegations of such a nature that same should be presented to a medical review panel.

In *Jackson v. DeSoto Retirement & Rehab. Ctr., Inc.,* 40,482 (La.App. 2 Cir. 12/14/05), 917 So.2d 727, the second circuit held that the degree of care to be provided to a nursing home patient is a question to be answered within the context of a medical malpractice analysis. By contrast, the failure to instruct a hospital patient on the proper operation of his bed, and the failure to keep the bed in working condition, are allegations unrelated to medical treatment and are therefore not governed by the Medical Malpractice Act. *Blevins v. Hamilton Medical Center, Inc.,* 07-127 (La. 6/29/07), 959 So.2d 440.

After reviewing the record before us, we find no error in the conclusions reached by the trial court. Considering the jurisprudence and the facts asserted in the petition, we view this claim as one sounding in medical malpractice, requiring the testimony of experts regarding the assessment, monitoring, supervision of the decedent as well as the applicable standard of care, an analysis of the professional skill required in attending to a patient in distress, and a review of the correctness of

4

the staff's actions in following a doctor's orders.  Ultimately, a determination must be made as to whether there was negligence in the health care provided to the decedent.

Accordingly, the judgment of the trial court is affirmed.  Costs of this appeal are assessed to the plaintiffs.

**AFFIRMED.**